UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIKA SALINAS CARVAJAL,
on behalf of herself and others,

        Plaintiffs,                    Case No. 1:17-cv-375

v.                                        Hon. Paul L. Maloney

TRINITY HEALTH MICHIGAN,
a Michigan Corporation d/b/a
MERCY HEALTH GRAND RAPIDS,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is now before the Court on defendant's motion for dismiss (ECF No. 13), which has been referred to the undersigned to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     Plaintiffs' claims**

Plaintiff Erika Salinas Carvajal ("Carvajal") filed this action on behalf of herself and others similarly situated (collectively referred to as "plaintiffs") to recover damages from defendant Trinity Health Michigan, a Michigan Corporation, d/b/a Mercy Health Grand Rapids (referred to as "defendant" or "Mercy Health").  Carvajal has alleged that Mercy Health committed willful and knowing violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") which deprived her of proper compensation for all hours worked.

The complaint consists of four counts.  Count I alleged that defendant violated the FLSA by failing to pay Carvajal an overtime premium for all hours worked in excess of 40 hours

per workweek.  Compl. at PageID.17-18.  For her damages, plaintiff seeks the amount of her
unpaid overtime wage along with an equal amount as liquidated damages.  *Id*. at PageID.23.

The complaint also includes three counts for violations of state law.  Count II
alleged that defendant breached an implied contract to properly compensate Carvajal for each hour
worked.  *Id*. at PageID.18-19.  Count III alleged that defendant was unjustly enriched by the benefit
it received from failing to properly compensate Carvajal.  *Id.* at PageID.19-20.  Count IV alleged
a civil conspiracy, stating that "[d]efendant planned, with other entities and individuals, to only
hire interpreters through other agencies and label them as independent contractors, so that they
could avoid having to pay [Carvajal] the appropriate overtime rate."  *Id.* at PageID.20-21.  With
respect to the state claims, plaintiff seeks "the amount owed for those violations."  *Id*. at PageID.23.

Finally, Carvajal seeks certification of a collective action pursuant to 29 U.S.C. §
216(b) of the FLSA with respect to Count I, certification of a class action pursuant to Fed. R. Civ.
P. 23 with respect to Counts II, III and IV, and damages for the class members.  *Id*. at PageID.22-
23.

## II.    Defendant's motion to dismiss

## A.    Legal Standard

Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6)
for failure to state a claim upon which relief can be granted.  A complaint may be dismissed for
failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds
upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

[A] complaint must contain sufficient factual matter, accepted as true, to
state a claim to relief that is plausible on its face.  A claim has facial plausibility
when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged.  The plausibility
standard is not akin to a probability requirement, but it asks for more than a sheer
possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line
between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).  In
making this determination, the complaint must be construed in the light most favorable to the
plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Church's Fried Chicken*,
829 F.2d 10, 12 (6th Cir. 1987).

### B.    Discussion

### 1.    Count IV (Conspiracy)

As an initial matter, the Court will address the alleged conspiracy which lies at the
heart of the complaint.  Carvajal alleged "[a]t all relevant times, Plaintiff and other Class Members
performed interpreting services on behalf of Defendant [Mercy Health] for Defendant's various
medical providers, patients, employees, contractors and service providers" at "various different
locations owned by the Defendant."  Compl. at PageID.6.  In this regard, Carvajal alleged that
prior to being classified as independent contractors, Mercy Health "directly hired them to work as
on site interpreters" and paid them on an hourly basis for all hours worked, including "an overtime
premium of time and one-half the regular rate of pay for all hours worked in excess of forty (40)
hours in a workweek."  *Id*. at PageID.10.  Then, Carvajal alleged that in about "2009 or 2010"
(seven or eight years before filing this lawsuit), Mercy Health changed that relationship when it
entered into a conspiracy with non-party Claudio Abuanza to "form her own business entity which
would directly hire the Class Members and then lease them to Defendant as independent
contractors."  *Id*.  In this regard, Carvajal's complaint alleged that Mercy Health conspired with
unnamed "entities and individuals" including Claudio Abuanza (d/b/a People Connections) to
intentionally misclassify her as an independent contractor, which resulted in the failure to pay her

for all hours worked as well as the required overtime rate of one and one-half times her regular rate for hours worked in excess of forty (40) hours during a workweek. *Id.* at PageID.2.

Mercy Health seeks dismissal of the state law civil conspiracy claim on the ground that there is no underlying tort claim to support the alleged conspiracy. Under Michigan law, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Arrowood Indemnity Co. v. Cristini*, 630 Fed. Appx. 512, 517 (6th Cir. 2015), quoting *Early Detection Center, PC v. New York Life Insurance Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830 (1986). *See Specialized Pharmacy Services, LLC v. Magnum Health & Rehab of Adrian, LLC*, No. 12-12785, 2013 WL 1431722 at *4 (E.D. Mich. April 9, 2013) ("alleged breach of contract is not grounds for a civil conspiracy claim"). Here, Carvajal has not alleged a separate actionable tort against Mercy Health. Accordingly, Carvajal's claim for civil conspiracy alleged in Count IV should be dismissed.

### 2.    Count I (FLSA violation)

The gist of Carvajal's FLSA claim is that Mercy Health was her employer and failed to pay her "an overtime premium for all hours worked in excess of 40 hours per workweek." Compl. (ECF No. 1, PageID.18). An "employer" is defined broadly under FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

> "The remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir.1989) (per curiam). In deciding whether a party is an employer, "economic reality" controls rather than common law concepts of agency. *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). One reason for this broad approach is because "[t]he FLSA contemplates there being several simultaneous employers who

may be responsible for compliance with the FLSA." *Id.* (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

Courts consider the following factors in determining whether a person is an employee under the FLSA: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of the services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; (6) whether the service rendered is an integral part of the alleged employer's business; (7) whether the business had authority to hire or fire the plaintiff; and (8) whether the defendant-company maintains the plaintiff's employment records. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807 (6th Cir. 2015), citing *Donovan v. Brandel*, 736 F.2d 1114, 1117, fn. 5 (6th Cir. 1984).

Here Carvajal alleged that non-party Abaunza hired her and paid her wages, but that Mercy Health supervised and controlled her when she arrived at a Mercy Health Facility:

> In essence, Conspirator [sic] Abaunza and her business People Connections directly hired Class Members and paid them their wages. However, once Class Members were at one of Defendant's facilities, Class Members were under the direct supervision and control of Defendant.

Compl. at PageID.11.

Carvajal alleged a number of facts to support the claim that she was under "the direct supervision and control" of Mercy Health. When plaintiff arrived at a Mercy Health facility, defendant's coordinator gave her assignments for the day, required her to stay at the building even if she was not in an appointment, let plaintiff "know if she was still needed or if she was free to go for the day," instructed her when to sign in and out, and informed her when she could go on a

lunch break.  Compl. at ¶ 46.[1]  Sometimes plaintiff was required to wait in case an emergency arose and she was needed to a translate.  *Id*. at ¶ 47.  "Plaintiff could not come and go as she pleased."  *Id*. at ¶ 48.  Plaintiff was required to complete forms stating that she had interpreted for an appointment and have these forms signed by a receptionist, doctor, or coordinator employed by Mercy Health.  *Id*. at ¶ 50.  If plaintiff needed to leave during the times she was at a Mercy Health facility or needed to cease work at a certain time, she would have to request permission from a supervisor or coordinator employed by Mercy Health.  *Id*. at ¶¶ 53-54.  Finally, Mercy Health determined the amount of hours to be worked by the plaintiff.  *Id*. at ¶ 58.

Plaintiff also alleged facts which describe her relationship with Abaunza and People Connections – the non-parties to this litigation who hired and paid her.   Plaintiff was required to submit a timesheet to Abaunza, whom plaintiff alleged was a "conspirator," an "agent of Defendant," the person who hired her, the person who paid her, and the person who leased her to defendant as an independent contractor  *Id*. at ¶¶ 49, 83, 84.  The information of plaintiff's time spent at Mercy Health "had to be entered into a computer and the original given to Conspirator Abaunza."  *Id*. at ¶ 51. Plaintiff also had to complete a different sign-in/sign-out sheet with Abaunza.  *Id*. at ¶ 52.  Plaintiff was not allowed to hire others to perform the work she was doing for Mercy Health.  *Id*. at ¶ 61.  Finally, during the period of time that plaintiff was on call, she was required to be within a certain radius or travel distance of the Mercy Health facilities.  *Id*. at ¶ 70.

Plaintiff set forth the following allegations regarding her compensation and the requirement that she be "on call" as an interpreter.  Plaintiff typically worked between forty-five (45) hours and seventy (70) hours in a given workweek.  *Id*. at ¶ 68. Plaintiff was paid on a straight time, hourly rate basis regardless of the number of hours worked in a workweek.  *Id*. at ¶¶ 67, 73.

---

[1] The cited paragraphs appear at PageID.7-10.

The 45 to 70-hour workweeks "do not include the time Plaintiff was on call and required to be available to come in for an assignment." *Id*. at ¶ 69. When plaintiff was "on call," she was not paid for her time, was required to be within a certain radius or travel distance of Mercy Health's facilities, and "was unable to participate in activities with her family that would have her outside the permitted travel distance from the Defendant's facilities." *Id*. at ¶¶ 70-72.

Plaintiff also made the following general allegations to support her FLSA claim. She had no opportunity for profit or loss, and no financial investment in her work with Mercy Health. *Id*. at ¶¶ 61-62. Plaintiff did not advertise her services and "at all times relevant to this matter worked exclusively for the Defendant." *Id*. at ¶¶ 64-65. Finally, in ¶ 66, plaintiff alleged that "[t]he economic reality of the relationship between the parties is such that Plaintiff was not in business for herself and was completely dependent on Defendant for her income."

As a general observation, rather than setting forth "a short and plain statement of the claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), plaintiff has set forth lengthy and circuitous allegations which characterize her claim for unpaid wages as the result of a conspiracy involving Mercy Health, Abaunza d/b/a People Connections, and unnamed co-conspirators. Once the Court has waded through the alleged conspiracy, the following facts emerge: Carvajal used to be employed by Mercy Health as an interpreter; she was "hired" as either an employee or an independent contractor by Abaunza d/b/a People Connections; she turned in her hours to Abaunza d/b/a People Connections, who paid her; she performed work exclusively as an interpreter at Mercy Health; someone would tell her to go to a Mercy Health facility to commence her work as an interpreter; when she arrived at the facility, Mercy Health employees assigned her tasks and kept track of her hours; while at the facility, "[p]laintiff could not come and go as she pleased" but would have to request permission from a Mercy Health supervisor or

7

coordinator to leave; someone placed her "on call" to act as an interpreter at Mercy Health facilities; she was not paid for time spent on call; she was paid at an hourly rate; and she did not receive a premium when she worked more than 40 hours in a workweek.

In the Court's opinion, Carvajal has not alleged sufficient facts to establish that Mercy Health was her employer under the FLSA. *See Keller*, 781 F.3d at 807. Carvajal did not allege that Mercy Health had the authority to hire her or fire her. Rather, Carvajal alleged that "Abaunza and her business People Connections" hired her and paid her wages. Compl. at PageID.11. Carvajal did not allege: that Mercy Health maintained her employment records (other than keeping track of her time spent at the facility); that she had a permanent relationship with Mercy Health; or that her services as an interpreter were an "integral part" of Mercy Health's business. Plaintiff also alleged she "had no opportunity for profit or loss" and "no financial investment in her work" with Mercy Health.

Plaintiff's FLSA claim rests with the fifth consideration identified in *Keller*, i.e., "the degree of the alleged employer's right to control the manner in which the work is performed." In the Court's opinion, plaintiff has not alleged sufficient facts to demonstrate that Mercy Health had such a degree of control over the manner in which she performed her work as to be her employer. The fact that Mercy Health employees supervised Carvajal while she acted as an interpreter at a Mercy Health facility does not make Mercy Health her employer. Plaintiff's allegations are consistent with a scenario in which she was employed by, or contractually bound to Abaunza d/b/a People Connections, who directed her to report to a site operated by a third-party (Mercy Health) and act as an interpreter.

Carvajal's allegations that Mercy Health controlled her actions raises the specter that it was a "joint employer" with Abaunza. *See Comer v. Directv, LLC,* No. 2:14-CV-1986, 2016

WL 853027 at *6 (S.D. Ohio March 4, 2016) ("Joint-employment and employment are different

theories."). Under the FLSA the issue of joint employment "is largely an issue of control." *Bacon*

*v. Subway Sandwiches & Salads, LLC*, No. 3:14-cv-192-PLR-HBG, 2015 WL 729632 at *4 (E.D.

Tenn. Feb. 19, 2015). In *Comer*, the court explained "joint employment" in the context of FLSA

claims brought by satellite installation technicians:

> If neither DIRECTV, DirectSAT, nor Multiband were the technicians "employer,"
> none will be liable for any claims. If one of the defendants were an "employer," it
> could be liable for minimum wage and overtime claims. *See* 29 U.S.C. § 216(b)
> ("Any employer who violates the provisions of section 206 or section 207 of this
> title shall be liable to the employee or employees affected in the amount of their
> unpaid minimum wages, or their unpaid overtime compensation, as the case may
> be, and in an additional equal amount as liquidated damages."). If more than one
> of the defendants was a technicians' employer, then the question of joint-
> employment becomes important, because it could make two or more employers
> jointly liable for any damages. 29 C.F.R. § 791.2(a) (Joint employment) ("all joint
> employers are responsible, both individually and jointly, for compliance with all of
> the applicable provisions of the act, including the overtime provisions, with respect
> to the entire employment for the particu-lar [sic] workweek."). Importantly, "there
> is nothing in the multifactor tests for either employment or joint employment that
> requires a plaintiff to establish that he is an FLSA 'employee' of each and every
> entity above him." *Dowd v. Directv, LLC*, No. 14-CV-14018, 2016 WL 28866, at
> *4 (E.D. Mich. Jan. 4, 2016).

*Id*.

"While the Sixth Circuit has not articulated a test for identifying a joint employer

for FLSA purposes, it has considered three factors in the context of Title VII, in determining

whether an entity may be considered a joint employer: (1) exercise of the authority to hire, fire,

and discipline; (2) control over pay and insurance; (3) and supervision." *Williams v. King Bee*

*Delivery, LLC*, 199 F. Supp. 3d 1175, 1180-81 (E.D. Ky. 2016). *See Bacon*, 2015 WL 729632 at

*4 (listing the three factors). As the court stated in *United States Department of Labor v. Cole*

*Enterprises, Inc.*, 62 F.3d 775 (6th Cir. 1995):

> More than one "employer" can be responsible for FLSA obligations. Thus, a
> corporate officer who has operational control of the corporation's covered

> enterprise is an "employer" under FLSA, along with the corporation itself.  One
> who is the chief executive officer of a corporation, has a significant ownership
> interest in it, controls significant functions of the business, and determines salaries
> and makes hiring decisions has operational control and qualifies as an "employer"
> for the purposes of FLSA.

*Cole Enterprises, Inc.*, 62 F.3d at 778 (internal citation omitted).

With respect to a joint employer theory, Carvajal has not alleged that Mercy Health had authority to hire, fire or discipline her.  As discussed, it is unclear from the complaint as to the extent to which Mercy Health controlled her pay.  While plaintiff logged hours at Mercy Health, she was paid by Abaunza d/b/a People Connections.  Plaintiff makes no allegations about anyone providing insurance.  Nor has Carvajal alleged that there was some type of interrelation of operations between Mercy Health and Abaunza which would give rise to operational control, *e.g.*, that Mercy Health owned and operated Abaunza's business.  The only relationship alleged by plaintiff is that Mercy Health was a co-conspirator with Abaunza.

The only factor supporting a joint employer theory which Carvajal alleged against Mercy Health is that its employees supervised her while she was at one of their facilities.  In the Court's opinion, Carvajal's allegations regarding supervision do not establish that Mercy Health had sufficient control over her to qualify as a joint employer.  In this regard, plaintiff's allegations are consistent with a scenario in which she was employed by or contractually bound to Abaunza d/b/a People Connections, to perform work as directed at a site operated by a third-party (Mercy Health).  For these reasons, the Court should dismiss Carvajal's request for relief under the FLSA as alleged in Count I. [2]

---

[2] In the alternative, Mercy  Health contends that Carvajal's FLSA claim is partially barred by the statute of limitations. It is unnecessary to address the alternative ground at this juncture, given the recommendation to dismiss the complaint.

### 3.    Count II (breach of implied contract) and Count III (unjust enrichment)

The remainder of Carvajal's claims against Mercy Health involve violations of Michigan state law for breach of implied contact and unjust enrichment.  Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, presumably because those claims were intimately related to the alleged FLSA violation.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").  The dismissal of plaintiff's federal claim against defendant, however, requires the court to re-examine the issue of supplemental jurisdiction with respect to the state law claims against defendant.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).  As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).  Because Carvajal has failed to allege a violation of the FLSA, there is no reason to retain supplemental jurisdiction over her state law claims. Accordingly, the Court should dismiss the state law claims asserted against Mercy Health.

## III.    RECOMMENDATION

For these reasons, I respectfully recommend that Mercy Health's motion to dismiss

(ECF No. 13) be **GRANTED** and that the complaint be **DISMISSED**.


Dated:  September 27, 2018                           /s/ Ray Kent
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).